### GILGER, Estate of, In re.

Probate Court, Portage County.

No. 17698.   Decided July 7, 1952.

James W. Harrah, Akron, for the heirs of John W. Gilger.
Philip Jones, Ravenna, for the heirs of Lilly M. Gilger.

## OPINION

By DIETRICH, J.

The parties to this case agree that the following is a correct statement of the facts involved:

On March 1, 1952, John W. Gilger and his wife, Lilly M. Gilger, while crossing a street in the village of Mogadore, Ohio, were struck by an automobile. Mr. Gilger died within a few minutes and his wife died on March 21, 1952, admittedly from injuries sustained in this accident. No children had been born as the issue of the marriage of John and Lilly Gilger. Mr. Gilger is survived by two brothers, a half-sister, two nephews and two nieces. Mrs. Gilger is survived by two brothers and a sister. Both parties died intestate.

On April 15, 1952, the administrator of the estate of John Gilger filed the inventory and appraisal of his estate. In this inventory, John Gilger's administrator listed all property that stood in the names of both parties at the time of death under the belief that a correct interpretation of §10503-18 GC, justified such action. The administrator of Lilly M. Gilger's estate filed exceptions to this inventory and the matter was submitted to the court for an interpretation of §10503-18 GC and a determination of the rights of the heirs to these two estates.

Sec. 10503-18 GC, is as follows:

"Presumption of Order of Death. When there is no evidence of the order in which the death of two or more persons occurred, no one of such persons shall be presumed to have died first, and the estate of each shall pass and descend as though he had survived the other or others. When the surviving spouse or other heir at law or legatee dies within three days after the date of death of the decedent, or within thirty days after the date of death of such decedent, if such death resulted from a common accident, the estate of such first decedent shall pass and descend as though he had survived such heir or legatee. The provisions of this section shall not prevail over the right of election of a surviving spouse."

What was the intent of the legislature when it enacted this statute? Obviously the purpose was to vary the general law of descent and distribution in order to prevent a surviving spouse from inheriting the estate of a decedent, when due to the circumstances of her death, she could have no need or use of it, and both her estate and that of the first decedent would pass to her heirs.

One of the first cases to consider this section after it became effective on January 1, 1932, was Estate of Thatcher, 30 O. N. P. (N. S.), 515. This decision contains the following as to the purpose of this law:

"When an heir or legatee of a deceased person dies so shortly after the death of such deceased person, so as to eliminate the possibility of such heir or legatee enjoying the benefits derived from the estate of such deceased person, there is no reason in law or equity for causing the estate of such deceased person to pass from his or her heirs to the heirs of the beneficiary who does not survive long enough to enjoy the benefits therefrom."

In this opinion, Judge McClelland also quotes from the original minutes of the Probate Code Committee of the Ohio Bar Association which drafted this section. This quotation shows that the intended purpose of this section is to prevent

the inequity that would result "in letting all property pass to the other branch of the family where there is only a few days difference in the time of death."

To the same effect is **Estate of Kessler, 85 Oh Ap, 240, 40 O. O. 167,** where the court states (page 242) that the purpose of "this statute was to prevent double inheritance."

It should be noted also that this section does not establish a presumption as to the order of death although it is so entitled in the Code. As said by the Supreme Court: **Ostrander v. Preece, 129 Oh St, 625, 3 O. O. 24,** it is an "enactment, repealing, modifying or changing the course of descent and distribution of property and the right to inherit or transmit property. It does not establish a presumption of the order of death, but merely defines the right of inheritance to property of those who die within the time and under the circumstances therein described."

The first contention of counsel for the estate of John Gilger is that under this section all of the property that was in his name at the time of his death (with certain exceptions that will be considered later) passed to his heirs; that no part of Mr. Gilger's estate passed to his wife and her heirs have no claim against his estate. With this contention the court agrees.

This section sets up the legal fiction that the first decedent died last and that no part of his estate passes to the spouse who survived him by less than thirty days. In fact the decisions interpreting this section have held that there is no widow in legal contemplation and her heirs could claim neither the property exempt from administration under §10509-54 GC nor a year's allowance. Estate of Thatcher, supra; **Estate of Metzger, 140 Oh St, 50, 23 O. O. 257.** In the Kessler case it is stated:

"The effect of this provision of the statute is not to make each decedent the survivor of the other, and as a consequence, each decedent the heir of the other, but rather to deprive the second decedent from taking any part of the estate of the first decedent when death occurs under conditions set forth in the statute."

A similar result was reached in the Ostrander v. Preece case.

The second contention of counsel for John Gilger's estate is that not only do the heirs of Mr. Gilger inherit his estate, but the effect of the statute is to make Mr. Gilger the heir of his wife; that all her separate estate passes to her husband's estate and so to his heirs, eliminating her heirs from any inheritance. His theory is that the second decedent's estate is governed by the same provisions as that of the first. With this contention the court cannot agree.

To follow this theory would result in the inheritance by one group of heirs, of the estates of both decedents, thus defeating, entirely, the obvious purpose of the statüte.

If we look first at the language of the statute itself, its meaning is quite clear on this point. It says "the estate of such first decedent shall pass and descend * * *." No provision is made as to the descent of the estate of the second decedent. The legal fiction as to descent does not apply to the estate of the second decedent. Accordingly, Mrs. Gilger's estate would be governed by the general statute of descent and distribution (§10503-4 GC) and since actually Mr. Gilger did not survive her, Mrs. Gilger's estate would go to her heirs. As stated in the Thatcher case (page 521) "The court finds and adjudges that the wife's heirs are entitled by the law of this state to inherit her estate, and that her husband—by virtue of §10503-18 GC, is not entitled to inherit her estate."

There is a similar conclusion in the Kessler case and in **Harrison v. Hillegas, 13 O. O. 523.**

The foregoing principles would govern, generally, the distribution of the assets of these two estates. However there are three classes of assets which are controlled by special rules.

Listed in the inventory is a savings account in the amount of $700. This is in the Mogadore Savings Bank and according to the bank records is in the names of "John or Lilly Gilger or survivor."

It is a well established rule in Ohio that **§10503-18 GC** has no application where the husband and wife are owners of a joint and survivorship bank account and the proceeds from said account are payable to the estate of the second decedent under the law of contract.

"This statute operates in the field of the law of inheritance and has no application to rights vested under contract." Estate of Kessler (supra).

"A joint and survivorship account at the time it is created carries a present vested interest and is not affected by the laws of descent and distribution." **Oleff, Adm. et al. v. Hodopp. Gdn., 129 Oh St, 432, 2 O. O. 409.**

There are involved in these two estates, life insurance policies of three types: (1) Policies in which Mr. Gilger was the insured and Mrs. Gilger was the beneficiary; (2) Policies in which Mrs. Gilger was the insured and her husband was the beneficiary; (3) Policies in which Mrs. Gilger was the insured, payable at death to her estate.

The Thatcher case considered the question of life insurance

policies in relation to §10503-18 GC. Judge McClelland's conclusions (page 522) are as follows:

"As to insurance policies, it must be observed that they constitute a particular contract in which three parties have an interest viz: the insured, the company and the beneficiary. By the express terms of these policies, immediately upon the death of the insured, the policies mature and the rights of the designated beneficiary to the proceeds of the policies become fixed.

"It must be borne in mind that insurance policies made payable to the designated beneficiary, upon the death of the insured, form no part of the estate of the insured, but vest immediately in the beneficiary and become part of this or her property. Since §10503-18 GC, controls only the estate of a deceased person, it has no application to the policies on the life of the husband, since they vested immediately upon his death in his wife, who survived him.

"There is no question concerning policies on the life of the wife, since it is the settled life insurance law that when the designated beneficiary predeceases the insured the policy becomes payable to the estate of the insured, unless the policy otherwise provides."

Although the ownership of life insurance proceeds was not a direct question in the Thatcher case, the court finds no instance where these principles have been questioned and accepts them as a correct statement of the law on this point. Accordingly, the proceeds of the life insurance policies belong to Mrs. Gilger's estate, under the law of contract, since actually she survived her husband.

The claims of Mr. Gilger's heirs to these proceeds are:

First, that under the conditions of this case, the law presumes that Mr. Gilger died last. This is answered by the Ostrander v. Preece case (supra) in which the Supreme Court comes to the definite conclusion that §10503-18 GC does not establish a presumption of the order of death."

Second, that it is inequitable to give these proceeds to Mrs. Gilger's heirs, when he had paid all premiums on the first type of policy. The law has been long established that one who pays the premiums on a life insurance policy acquires thereby no rights not accorded to him by the contract. In re Ammerman, 32 N. P. (N. S.), 457.

We come now to the last property classification: The inventory lists fifty-five U. S. Government E bonds having a current value of $1319.25. These bonds all bear the designation "John or Lilly Gilger." Both parties claim these bonds as belonging to their respective estates. This poses the ques-

tion: do these bonds pass under the law of descent and distribution or is this designation a contract similar to a joint and survivorship account, under which the government contracts to pay the proceeds to the survivor?

Although there are decisions holding to both sides on this question, the matter has been settled by the Supreme Court. In the case of **Estate of DiSanto, 142 Oh St, 223, 27 O. O. 179,** it was held that in the purchase of a War Savings Bond, the purchaser who places a second name on the bond makes a contract under which the government agrees, upon the purchaser's death to pay the proceeds to the survivor. This is governed by the regulations of the treasury department, which become a part of the contract. As said by the Supreme Court (page 231):

"That a bond is a contract needs no citation of authority. That the contract will be enforced so long as the same are not illegal is also elementary. The terms of the treasury circulars are specifically made a part of the contract as if they were fully set out in the bond form."

The regulations prescribed by the secretary of the treasury under Section 22 of the Second Liberty Bond Act (Circular 530, February 13, 1945) have the following provisions:

"Section 315.4. Authorized Forms of Registration Series E and General Provisions Relating to Their Use.

"(a) Forms of Registration. Bonds of Series E may be registered only in the names of individuals (natural persons) whether adults or minors, in their own right in one of the following forms.

"(b) Two Persons:—Co-ownership Form. In the names of two (but not more than two) persons in the alternative as co-owners, for example, "John A. Jones or Mrs. Ella S. Jones."

"Section 315.45. Payment or reissue. A savings bond registered in the names of two persons as co-owners in the form, for example, 'John A. Jones or Mrs. Mary C. Jones,' will be paid or reissued as follows:

"(c) Payment or reissue after the death of one co-owner.— If either co-owner dies without the bond having been presented and surrendered for payment or authorized re-issue, the surviving co-owner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor.

"(2) Payment or reissue after the death of the surviving co-owner—If a surviving co-owner who becomes solely entitled to the bond under the provisions of subsection (c) of this section dies without having presented and surrendered the bond for payment or authorized reissue, the bond will be con-

sidered as belonging to his estate and will be paid or reissued accordingly."

Under the DiSanto case and the contract covering these bonds as shown by the treasury regulations, the court concludes that the E Bonds listed in the inventory are the property of the estate of Mrs. Gilger. To the same effect are the following: **Estate of Taylor, 27 O. O. 434; Estate of Reiner, 47 O. O. 222; In re R. D. Chittock, Deceased, 47 O. O. 226.**

To summarize:

(1) Under §10503-18 GC, if a husband dies as a result of an accident and his wife dies twenty-one days later as a result of the same accident, the general assets of the estate of the husband pass to his heirs, and no part of his estate passes to the estate of his wife.

(2) Under such circumstances, the general assets of the estate of the wife pass to her heirs, since this section deals only with the estate of the first decedent and does not set up a presumption as to the order of death.

(3) Joint and survivorship bank deposits, the proceeds of life insurance policies and co-owner U. S. Savings Bond of the E type are not controlled by statutes of descent and distribution but are controlled by the laws of contract and are payable according to their contract terms.

The parties will file an amended inventory in accordance with the foregoing findings. Exceptions of both parties are hereby noted.